## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ERIC MATTHEW NEGRIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:22-CV-00248-MTT-CHW** |
| | : | |
| **Nurse BETTY EVANS, *et al.*,** | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court are Plaintiff's Motion for an Indefinite Extension of Time (Doc. 37), Defendants Betty Evans, John Gary, and Darren Mitchum's Motion to Dismiss (Doc. 18), Defendant Betty Evans' Motion for Summary Judgment (Doc. 29), and Defendants John Gary and Darren Mitchum's Motion for Summary Judgment (Doc. 33). Plaintiff did not respond to either the motion to dismiss or the motions for summary judgment. For the reasons explained below, Plaintiff's Motion for an Indefinite Extension of Time (Doc. 37) is **DENIED.** It is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 18) be **GRANTED** and that Defendant Betty Evans' Motion for Summary Judgment (Doc. 29) and Defendants John Gary and Darren Mitchum's Motion for Summary Judgment (Doc. 33) be **DENIED as moot**.

## BACKGROUND

On July 5, 2022, Plaintiff filed a complaint against Defendants Sheriff Darren Mitchum, Captain John Gary, Nurse Betty Evans, Dr. James Graham, and Dr. Michaels, alleging that they were deliberately indifferent to his mental health needs and that they failed to protect him from an attack from another inmate while he was incarcerated at Twiggs County Jail ("TCJ"). (Doc. 1).

The Court allowed Plaintiff's medical care claims to proceed against Defendants Evans, Gary, and Mitchum but dismissed Plaintiff's remaining claims and the remaining defendants on November 17, 2022.  (Doc. 6).  On December 5, 2022, Defendants filed a Motion to Dismiss for Failure to State a Claim.  (Doc. 18).  Defendant Evans filed a Motion for Summary Judgment on April 18, 2023.  (Doc. 29).  Defendants Gary and Mitchum also filed a Motion for Summary Judgment on the same day.  (Doc. 33).  Plaintiff filed a Motion for Indefinite Extension of Time on May 30, 2023.  (Doc. 37).

## RELEVANT FACTS

Plaintiff's claims against Defendants Evans, Gary, and Mitchum stem from his incarceration at Twiggs County Jail ("TCJ") from July 2020 to October 2020.  Plaintiff claims that Defendants failed to provide him with his anti-depressants, which caused him to be suicidal.  (Doc. 1 at 5).  Plaintiff was ordered by jail doctors to remain in medical isolation until he completed a mental health examination with a "qualified mental health doctor."  (*Id.*)  According to Plaintiff, despite being aware of the doctors' orders, Defendants failed to provide Plaintiff with an opportunity to speak to or receive help from a "qualified person," presumably a mental health professional, during and after his period of suicidality.  (*Id.*)

Plaintiff submitted dozens of grievances during his incarceration at TCJ regarding various issues, including medical care, meal preparation and meal content, religious accommodations, outdoor recreation time, and writing materials.  (*See generally* Doc. 18-1).  Plaintiff never submitted any grievance requesting psychological counseling or complaining about a lack of counseling or evaluation.  (Doc. 18-1 ¶ 11).  Plaintiff appealed several of his grievances on September 8, 2020.  (*Id.*)  The grievances that Plaintiff appealed concerned his housing assignment, criminal charges against him, requests for administrative segregation, medical care

for a neck injury, disputed charges to his account, COVID-19 and tuberculosis testing, and requests for more outdoor recreation time.  (Doc. 18-1 at 167-71).  None of Plaintiff's appealed grievances related to a deprivation of counseling or other mental health care.  (*Id.*)

## STANDARDS

Defendants move to dismiss Plaintiff's claims on the grounds that (1) Plaintiff failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); and (2) Plaintiff's claims are barred by res judicata.

### *The Exhaustion Requirement*

The PLRA mandates that prisoners exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law. Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal-court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for courts to review motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first:

> [L]ooks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

> *Turner*, 541 F.3d at 1082–83.

Second, if the complaint is not dismissed under step one, the court:

[P]roceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion …. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.*

Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss[.]" *Bryant v. Rich*, 530 F.3d 1368, 1375-76 (11th Cir. 2008) (quotation marks omitted). "In those types of Rule 12(b) motions, 'it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Tillery v. U.S. Dept. of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010) (quoting *Bryant*, 530 F.3d at 1376).

*The Grievance Procedure*

TCJ's grievance procedures are outlined in the Twiggs County Sheriff's Office Inmate Handbook. (Doc. 18-1 at 4). This handbook is available to inmates via inmate computer terminals, and inmates must agree that they have reviewed the handbook in order to access the terminals. (*Id.* at 2). According to the handbook, if an inmate has a complaint, the detention officer receiving the complaint is to attempt to resolve the complaint informally. (*Id.* at 18). If an inmate is complaining about the commission of a prohibited act by a detention officer, a violation of the inmate's rights, or a criminal act, the officer is to refer the inmate to the formal grievance system rather than attempting to resolve the complaint informally. (*Id.*) If a complaint has been handled informally, the detention officer must notify the shift supervisor of the complaint and whatever actions were taken to address it. (*Id.*) The Jail Administrator is to maintain a record of such complaints in the Grievance Log Book. (*Id.*)

If an inmate's complaint is not handled informally, he may file a formal, written grievance within five days of discovery or when he reasonably should have discovered the incident underlying his complaint.  (*Id.*)  Inmates can acquire grievance forms from detention officers upon request.  (*Id.*)  The grievance must fully state the time, date, names of facility staff and inmates involved, witnesses, and a description of the incident at issue.  (*Id.*)  Upon receipt of a formal grievance, the Jail Administrator is to order an investigation of the incident that must begin in 24-hours of the grievance's receipt.  (*Id.* at 19).  An impartial staff member must investigate the grievance and submit a written report of his findings and recommendation to the Jail Administrator.  (*Id.*)  The Jail Administrator must provide a written response to the inmate that includes the investigation findings, reasons for the findings, and action taken within fifteen days of receiving the complaints.  (*Id.*)   After receiving the Jail Administrator's written response, the inmate has three days to either accept the findings and action taken or to appeal the decision to the Detention Division Commander.  (*Id.*)  If the inmate decides to appeal the decision, he must provide a written reasons for his appeal on the grievance form and give it to the Jail Administrator. (*Id.*)

After receiving an appeal from an inmate, the Jail Administrator must forward the appeal to the Detention Division Commander for review.  (*Id.*)  The Detention Division Commander must review, investigate, and respond to the appeal within 10 days.  (*Id.*)   The Detention Division Commander's response may concur with the grievance coordinator's response, request further investigation by the grievance coordinator or other staff, or provide his own solution to the problem.  (*Id.*)  After the Detention Division Commander responds to the appeal, the department grievance system is terminated as to that grievance.  (*Id.*)  Once the grievance is terminated, the

inmate has exhausted his administrative remedies and may resort to other avenues for resolution of his grievance. (*Id.*)

*Res Judicata*

"Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from relitigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 224 F.3d 1289, 1296 (11th Cir. 2001). "[A] party seeking to invoke [res judicata] must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Id.* "[I]n general, [if] a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, … the two cases are really the same 'claim' or 'cause of action' for the purposes of res judicata." *Id.* "The claim preclusion doctrine turns not on the nature of the plaintiff's claims or the legal authority in which they are grounded but on whether a court has already resolved claims between the same parties arising from the same events; if so, the doctrine prohibits the plaintiff from bringing the claims again regardless of their gravity or importance to the plaintiff." *Giddens v. Lawson*, 839 F. App'x. 350, 353 (11th Cir. 2020) (citations omitted). The moving party bears the burden of showing that the later-filed suit is barred. *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th. Cir. 1990).

## ANALYSIS

Plaintiff moves for an indefinite extension of time to answer the motions for summary judgment (Doc. 37). Defendants collectively move to dismiss. (Doc. 18). Defendants Evans moves for summary judgment (Doc. 29), as do Defendants John Gary and Darren Mitchum (Doc.

33).   For the following reasons, Plaintiff's Motion for an Indefinite Extension of Time for Response (Docs. 37) is **DENIED.**   It is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 18) be **GRANTED,** and that Defendants' Motions for Summary Judgment (Docs. 25; 33) be **DISMISSED as moot.**

*Plaintiff's Motion for an Indefinite Extension of Time to Respond*

After failing to respond to Defendants' Motion to Dismiss and more than a month after Defendants' Motions for Summary Judgment were filed, Plaintiff filed a motion for an indefinite extension of time to respond to the Motions for Summary Judgment.  (Doc. 37).  Plaintiff claims that he sustained severe damage to his neck and spine, as well as a near fatal head trauma, and that he must undergo emergency surgery "immediately."  (*Id.* at 1).  Plaintiff states that he has "not had the time or energy to even start summary judgment" and requests indefinite leave in consideration of his post-operation recovery.  (*Id.*)

Plaintiff has a history of requesting indefinite extensions for "emergency" circumstances.  *See* Doc. 13, *Negrin v. King*, Case No. 5:21-cv-269-MTT-CHW (M.D. Ga. Aug. 11, 2022) (requesting an indefinite stay because Plaintiff was "sever[e]ly sick w/COVID); Doc. 72, *Negrin v. Gary*, 5:20-cv-428-TES-CHW (M.D. Ga. May 25, 2022) (requesting indefinite leave as Plaintiff prepares for an unrelated trial); Doc. 83, *Negrin v. Chatman*, 5:21-cv-245-MTT-MSH (M.D. Ga. Oct. 21, 2022) (requesting an indefinite stay because of violent attacks occurring on July 31, 2022, that left Plaintiff with serious head trauma).   In this case, Plaintiff has already been granted a specific extension of time and denied an indefinite stay.  (Docs. 26; 6).  Additionally, Plaintiff has been denied indefinite extensions or stays in other cases when he has failed to indicate how long it might take him to heal or to explain in detail why his injuries prevent him from prosecuting his case.  *See* Doc. 84, *Negrin v. Chatman*, 5:21-cv-245-MTT-MSH (M.D. Ga. Oct. 21, 2022).

7

Plaintiff has been instructed that he should request specific extensions in such circumstances in the Court's previous order and in previous cases.  *Id.*; (*see also* Doc. 6).

Plaintiff also has a history of dishonesty with this Court, as he has repeatedly failed to disclose his litigation history, in this case and many others in this District.  *See Negrin v. Ga. Dept. of Corrections*, No. 7:22-CV-138-WLS-TQL (detailing Plaintiff's litigation history); (*compare to* Doc. 1 at 2-3).  Moreover, the Court has a significant interest in using "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936); *see also Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004) ("A district court must be able to exercise its managerial power to maintain control over its docket.").  Finally, Plaintiff has consistently filed articulate, clear motions throughout his various medical emergencies, which contradicts his alleged inability to proceed in his cases.  *See Scherffius v. Smith*, No. 2:13-cv-1277-JAM-DBP 2019 WL 2366959 (E.D. Cal. June 5, 2019) (denying an motion to continue indefinitely staying the case where the plaintiff failed to provide medical documentation of his medical issues and noting that plaintiff's motion to continue the stay and other filings were well-written and well-reasoned, which failed to show a basis for further delay).

In light of Plaintiff's extensive litigation history, previous warnings from the Court regarding his requests for indefinite extensions and stays, Plaintiff's history of dishonesty, and the Court's interest in effectively managing its cases, an indefinite extension of time is not appropriate in this case.  Accordingly, Plaintiff's Motion for an Indefinite Extension of Time (Doc. 37) is **DENIED.**

*Defendants' Motion to Dismiss*

Defendants argue that Plaintiff's claims should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies before filing suit, and (2) Plaintiff's claims are barred by res judicata. (Doc. 18). Both reasons warrant dismissal of Plaintiff's claims.

*Failure to Exhaust*

Failure to exhaust is analyzed under the two-step test established by *Turner v. Burnside.* 541 F.3d 1077, 1085 (11th Cir. 2008). Under the first step of the two-part *Turner* test, the Court must consider Defendants' factual allegations and compare them with those in Plaintiff's response. *Turner,* 541 F.3d at 1082-83. Because Plaintiff failed to respond to the Motion to Dismiss, the Court has considered the factual allegations in Plaintiff's complaint. (Doc. 1). Plaintiff claims that "all grievances, letters, and requests were deliberately delayed, and/or ignored, misplaced, and only (2) were ever responded to." (*Id.* at 3). Plaintiff alleges that he "personally spoke with each named defendant and submitted numerous grievances and requests, asking for help to no avail. [His] attempts were ignored." (*Id.* at 4). Plaintiff also claims that he "appealed to Chief Faulk, Sheriff Mitchum, and even the Mayor of Jeffersonville, Ga., to no avail." (*Id.*) Because Plaintiff's claims conflict with the Defendants' factual allegations, the Court must "take the plaintiff's version of the facts as true" at this stage of analysis. *Turner*, 541 F.3d at 1082-83. Because Plaintiff's claims cannot be dismissed at step one, the Court must proceed to step two of the *Turner* test and make specific findings in order to resolve the disputed factual issues related to exhaustion. *Id.* Accordingly, the Court may consider relevant evidence submitted by Defendants to resolve the factual dispute. *Tillery*, 402 F. App'x at 424 (quoting *Bryant*, 530 F.3d at 1376).

A thorough review of Plaintiff's grievance file shows that his factual allegations are false. Although Plaintiff claims that all of his grievances, letters, and requests were deliberately delayed,

ignored, or misplaced, the record shows that Plaintiff filed dozens of grievances and that each received a response.  (*See* Doc. 18-1).  This record contradicts Plaintiff's claim that Defendants only ever responded to two of his grievances.  (*Id.*)  The record also contradicts Plaintiff's claims that he grieved the issues central to this case—despite the large number of grievances Plaintiff filed during his time at TCJ, none of his grievances addresses a denial of psychological or medical care.  (*See* Doc. 18-1 ¶ 11).  Although Plaintiff did appeal several grievances, none of those appealed grievances addresses the claims at hand, either.  (*Id.* at 167-71).  Additionally, as explained above, Plaintiff has a pattern of dishonesty with the Court that undermines the credibility of his claims regarding unanswered or delayed grievances.  Finally, Plaintiff has made no attempt to refute Defendants' factual allegations, as Plaintiff failed to respond to the motion.

Accordingly, the record shows that Plaintiff failed to exhaust his administrative remedies before filing the present action.  Because "[e]xhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the § 1997(e) requirement," Plaintiff's claims must be dismissed for failure to exhaust.  *Mason v. Bridger*, 261 Fed. App'x. 225, 229 (11th Cir. 2008) (*citing Booth v. Churner*, 532 U.S. 731, 741 (2002)).

*Res Judicata*

Even if Plaintiff's claims were not barred by his failure to exhaust his administrative grievance process, his claims would be barred by res judicata.  Defendants argue that Plaintiff's claims are barred by res judicata because of a prior lawsuit in which Defendants were parties.  (Doc. 18 at 12); *see Negrin v. Gary*, No. 5:20-cv-428-TES-CHW.  *Negrin v. Gary* is a previous case brought by Plaintiff against the present Defendants[1], as well as additional defendants who are

---

[1] Defendant Betty Evans' name was somewhat unclear in *Negrin v. Gary*, as she was originally named as "Nurse Betty," and later referred to as "Defendant Davis" or "Nurse Betty Davis." However, these discrepancies were clarified when Defendant Evans responded to Plaintiff's complaint. *See* Doc. 33, *Negrin v. Gary*, 5:20-CV-428-TES-CHW.

not named in the present action. In that case, Plaintiff claimed that the defendants failed to protect him from an attack by another inmate and provided inadequate medical treatment for his injuries after the attack during his incarceration at TCJ from July 2020 to October 2020—the same period of incarceration at issue in this case. *Id.*, Doc. 1. Plaintiff's medical treatment claims proceeded for further development against Defendants Evans, Gary, and other defendants, and were later subject to summary judgment. *Id.*, Doc. 74. Defendants are correct that res judicata applies here; the final judgment in *Negrin v. Gary* bars Plaintiff's current claims, as both cases share the same cause of action. *In re Piper Aircraft Corp.*, 224 F.3d at 1296.

Establishing that claims are barred by res judicata requires that four elements be met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Id.* "[I]n general, [if] a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, … the two cases are really the same 'claim' or 'cause of action' for the purposes of res judicata." *Id.* "Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).

The first element of res judicata is met, as the federal district court is one of competent jurisdiction for such § 1983 actions. The second element is also met, as judgment has been entered on the merits in the first case. Because Defendants in the present case were parties to the prior suit, the third element is likewise met. Finally, the prior case involved the same cause of action as the present case, meeting the fourth element. In *Negrin v. Gary*, Plaintiff brought claims alleging that the defendants failed to protect him from another inmate who attacked him at TCJ and that

defendants were subsequently deliberately indifferent to Plaintiff's serious medical needs following the attack.  *See* Doc. 1, *Negrin v. Gary*, No. 5:20-cv-428-TES-CHW.  Although Plaintiff did not specifically refer to mental health treatment in the prior case, which focused more on medical treatment for physical issues, Plaintiff's current complaint arises out of the same transaction or series of transactions, as it involves the same period of incarceration and medical treatment surrounding the inmate attack at issue in *Negrin v. Gary*.  (Doc. 1). The mental health claims in this case are thus linked to the claims raised in the previous case, and Plaintiff could have—and should have—brought his present claims in his prior lawsuit. As such, res judicata applies and bars Plaintiff's present claims.

## CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies before filing suit and because Plaintiff's present claims are barred by res judicata, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 18) be **GRANTED.**  It is also recommended that Defendants' Motions for Summary Judgment (Doc. 25; 33) be **DENIED as moot.**  Plaintiff's motion for an indefinite extension of time (Doc. 37) is **DENIED.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Any objection is limited in length to **TWENTY (20) PAGES.**  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 12th day of July, 2023.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge